IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARVEY MACK LEONARD,<br><br>                    Petitioner,<br><br>vs.<br><br>AUDREY K. KING, Acting Executive Director, Coalinga State Hospital,<br><br>                    Respondent. | No. 2:12-cv-03009-JKS<br><br>MEMORANDUM DECISION |

Harvey Mack Leonard, a civil detainee proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.[1]  Leonard is in California state custody and involuntarily civilly committed to the Coalinga State Hospital as a sexually violent predator ("SVP").  Respondent has answered, and Leonard has replied.

---

[1]        A person in custody pursuant to the judgment of a state court may file a petition for a writ of habeas corpus in the United States district courts if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. §§ 2241(c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375, n.7 (2000).  The fact that Leonard is challenging his civil commitment for mental illness rather than his underlying conviction does not change the outcome as civil commitments are typically challenged in habeas proceedings.  *See Duncan v. Walker*, 533 U.S. 167, 176 (2001) (stating that a state court order of civil commitment satisfies § 2254's "in custody" requirement).

A person in state custody may challenge his confinement under 28 U.S.C. § 2241 or 28 U.S.C. § 2254.  However, a § 2241 petition generally challenges the execution of a sentence such as the "manner, location, or condition" of confinement.  *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000).  Because Leonard challenges the term of his confinement rather than the conditions surrounding it, he has properly brought his claim under § 2254.  *See Huftile v. Miccio–Fonseca*, 410 F.3d 1136, 1139-40 (9th Cir. 2005) ("[D]etainees under an involuntary civil commitment scheme . . . may use a § 2254 habeas petition to challenge a term of confinement.").

## I.  BACKGROUND/PRIOR PROCEEDINGS

On September 3, 2008, a Placer County Superior Court jury found Leonard to be a sexually violent predator under the Sexually Violent Predators Act ("SVPA"), CAL. WELF. & INST. CODE § 6600 et seq., and the court civilly committed him to the California Department of Mental Health ("DMH") for "appropriate treatment and confinement in a secure facility for an indeterminate term until such time that he is entitled to be released according to law."

On direct appeal, the California Court of Appeal summarized the following evidence presented at Leonard's civil commitment trial:

### A. Prosecution Evidence

**[Leonard]**
  [Leonard] was a serial rapist between 1976 and 1985, with at least eight victims.
  [Leonard] denied having a mental disorder, and therefore believes that any treatment would be a sham.  He has never successfully completed a sex offender treatment program.  He attributed his past sexually violent behavior to youth, stupidity, and a wild disposition.  [Leonard] was born January 1, 1950, and was 58 years old at the time of trial.

**Dr. Christopher North**
  Dr. North, a psychologist, evaluated [Leonard] in 2005 and diagnosed him with coercive paraphilia[2] (not otherwise specified), antisocial personality disorder,[3] and

---

   2  "The essential features of a paraphilia are recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving 1) nonhuman objects, 2) the suffering or humiliation of oneself or one's partner, or 3) children or other nonconsenting persons . . . ." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 566 (4th ed. 2000).

   3  The American Psychiatric Association defines antisocial personality disorder as "a pervasive pattern of, disregard for, and violation of, the rights of others," often including criminal behavior, impulsivity, irritability or aggressiveness, and irresponsibility.  AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS § 301.7, at 701-06 (4th ed. 2000).

alcohol abuse.  (Paraphilia encompasses recurring and intense sexually arousing fantasies or behavior involving suffering of self or others.)

At trial, it was stipulated that Dr. North had updated his diagnosis, by stating: "In retrospect, I do not think [Leonard] has a coercive paraphilia, but I do think he meets [the SVP] criteria based on his ASPD [antisocial personality disorder], and that this disorder does predispose him to commit sexually violent offenses.  This [is] the first time that I ever recommended civil commitment for someone based on ASPD alone."

Dr. North found [Leonard] unamenable to treatment, noting that [Leonard] had resisted treatment and mocked those who did participate.

On tests assessing the likelihood for committing a new sex crime, [Leonard] scored in the "high risk" range on a "Rapid Risk Assessment for Sexual Offense Recidivism" (RRASOR) test in 1999 and on a "Static-99" test in 2000 (with a score of 7 on the Static-99 test, as calculated by Dr. North; 6 or above indicating "high risk").

While sex crimes typically decline with age, especially after 60, the more important factors include health, vigor and vitality.  [Leonard], 58 years old, appeared quite healthy and vigorous given his exercise routine (walking several miles per day), an assault he recently committed (he beat up an elderly patient in February 2007), and his possession of a Playboy picture.  Moreover, a study based on a Static-99-like test showed that offenders, aged 40 to 59 with two prior sexual sentencings, like [Leonard], had a 49 percent recidivism rate.  Another study concluded that, for serious offenders, advanced age should not be considered a possible actuarial mitigating factor.

**Dr. John Hupka**

Dr. Hupka, a psychologist, also evaluated [Leonard] in 2005 and diagnosed him with coercive paraphilia (not otherwise specified) and antisocial personality disorder, and [Leonard] still suffers from both.  Dr. Hupka opined that [Leonard] meets the SVP criteria.

Even without the paraphilia diagnosis, Dr. Hupka testified, he would still find [Leonard] likely to engage in sexually violent criminal behavior, given his still severe antisocial personality disorder.

Dr. Hupka scored [Leonard] at a "high risk" 8 on the Static-99 test.

Although studies show that, in general, the risk level of re-offense for sex offenders declines significantly between the ages of 50 and 59, and begins to approach zero for those 60 and above, [Leonard] was not a typical case.  [Leonard] may have been in his late 50's, but there was no evidence of his "slowing down," given his "very hostile" and "potentially threatening" behavior during a recent interview (June 2007) and given his very recent physical assault.

3

### B. Defense Evidence

**Dr. Denise Kellaher**

Dr. Kellaher, a psychiatrist, diagnosed [Leonard] with antisocial personality disorder, but found no evidence of paraphilia in his prior offenses; rather, he had been an "opportunistic rapist."

Dr. Kellaher opined that [Leonard's] antisocial personality disorder does not predispose him to commit sexually violent predator acts because this disorder diminishes sharply with age, and falls to around zero at around age 60 ("antisocial burnout"), and this has happened with [Leonard]. [Leonard] also suffers from diabetes, had a quadruple heart bypass in 2003, and was diagnosed with Peyronie's Disease in 2005 (a penis deformity that largely precludes erection).

**Dr. Brian Abbott**

Dr. Abbott, a psychologist, concluded that [Leonard] does not meet the SVP mental disorder criteria. [Leonard] suffers from antisocial personality traits that do not rise to antisocial personality disorder, and these traits diminish to very low rates of antisocial behavior in the 50 to 60-plus age range.

Furthermore, a study by the creator of the Static-99 test showed that rapists, aged 50 to 59, reoffend at about a 13.5 percent clip, and at age 60-plus this rate drops to zero.

*People v. Leonard*, No. C059936, 2010 WL 1217971, at *1-3 (Cal. Ct. App. Mar. 30, 2010).

Through counsel, Leonard appealed the superior court's commitment order, arguing that there was insufficient evidence showing that he was likely to engage in sexually violent criminal behavior if released and that his indeterminate commitment violates various provisions of the federal constitution, including due process, ex post facto, and equal protection. On March 30, 2010, the Court of Appeal issued an unpublished, reasoned opinion remanding the case to the trial court to determine, in response to Leonard's claim that "his indeterminate sentence violates his right to equal protection," whether sufficient justification had been shown for treating SVPs differently than other groups of individuals who are involuntarily committed. *Id.* at *5. The appellate court affirmed the order of commitment in all other respects. *Id.* The record is silent as to if, and when, the trial court addressed the equal protection claim on remand.

On April 30, 2010, Leonard petitioned for review to the California Supreme Court, challenging only the "issues affirmed by the Court of Appeal."  Leonard specifically disavowed that he was raising his equal protection claim and listed only his insufficiency of the evidence claim as presented for review.  The supreme court summarily denied the petition on June 9, 2010.

Leonard subsequently filed a petition for a writ of habeas corpus in the California Supreme Court, arguing that he was denied the effective assistance of counsel as a result of trial counsel's failure to preserve the issue of whether the trial court erroneously denied his request to exclude expert witness testimony from the probable cause hearing on the basis that any alleged interview was unrecorded.  The supreme court denied the petition without comment on April 20, 2011.

On December 13, 2012, Leonard commenced this action, in which he challenges the September 3, 2008, order of commitment.  Court records reflect that Leonard previously challenged the order of commitment in this Court in an action designated *Leonard v. Ahlin*, 2:10-cv-1701-JKS (E.D. Cal.).[4]  On March 12, 2012, the undersigned judge dismissed without prejudice for lack of jurisdiction the petition in that case, citing *Younger v. Harris*, 401 U.S. 37 (1971), which refers to the doctrine that forbids federal courts from unduly interfering with pending state court proceedings that implicate important state interests.

---

[4]     A court may take judicial notice of court records.  *See* FED. R. EVID. 201(b)(2) (permitting judicial notice of a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("[A] court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases.").

## II. GROUNDS/CLAIMS

In the instant *pro se* Petition before this Court, Leonard raises four grounds for relief.
First, he argues that there was insufficient evidence to support the jury's finding that he "remains
or ever was" an SVP.  Leonard next contends that "[t]he order of indefinite commitment violated
[his] federal constitutional rights to due process of law, to be free of ex[]post facto laws, and to
equal protection of the law."  Leonard asserts in his third ground that the SVPA violates his
double jeopardy rights.  Finally, Leonard argues that he was denied the effective assistance of
trial and appellate counsel.

## III.  STANDARD OF REVIEW

The Ninth Circuit has held that habeas petitions challenging state civil commitment
proceedings are governed by the Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA").  *See Rose v. Mayberg*, 454 F.3d 958, 961 n.3 (9th Cir. 2006).  Under AEDPA, 28
U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was
"contrary to, or involved an unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an
unreasonable determination of the facts in light of the evidence presented in the State court
proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court
applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts
a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but
nevertheless arrives at a different result.  *Williams*, 529 U.S. at 406.

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1)
"refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

relevant state-court decision." *Id.* at 412.  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where

holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it

cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"

*Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned

decision" by the state court.  *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004)

(citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  Under the AEDPA, the state court's

findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear

and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340

(2003).

IV. DISCUSSION

A.    *Younger* Abstention

As previously noted, the record is silent as to whether the trial court has on remand ruled

on Leonard's equal protection claim.  Indeed, a search of the California courts' case information

website (http://appellatecases.courtinfo.ca.gov/; Third Appellate District; case number C059936)

indicates that Leonard's case is still pending in the California court system.  As a result, this

Court must determine, as it did with regard to Leonard's previous Petition challenging the

commitment order, whether the *Younger* doctrine applies here.  In concluding that the *Younger*

doctrine barred this Court from exercising its jurisdiction to consider Leonard's previous

Petition, this Court stated:

Although *Younger* itself held that, absent extraordinary circumstances, a federal court may not interfere with a pending state-criminal prosecution, the Supreme Court and the Ninth Circuit have extended *Younger* abstention to civil cases on numerous occasions.  The Supreme Court laid out a three-part test for determining when to apply *Younger* in a civil proceeding, holding that abstention is required so long as the state proceedings: (1) are ongoing; (2) implicate "important state interests"; and (3) provide an adequate opportunity to raise federal questions.[FN15]  To these three threshold requirements, the Ninth Circuit has articulated an implied fourth requirement that abstention is required if (4) the federal court action would "enjoin the proceeding, or have the practical effect of doing so."[FN16]

> FN15.  *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982).

> FN16.  *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1148-49 (9th Cir. 2007).

Because the state appellate review process has not yet been completed, Leonard's SVP civil commitment proceeding is still on-going,[FN17] and thus the first factor is clearly met.  Likewise, it is clear that each of the constitutional issues Leonard is attempting to assert in this proceeding may be raised in Leonard's pending state-court proceeding; indeed, they have been.  The state interest involved concerns for the health and safety of the state's citizens.  There can be no doubt that a state has an important interest in safeguarding the health and safety of its citizens.[FN18]  Thus, the three factor test from the Supreme Court's decision in *Middlesex* has been met.

> FN17.  *See* [*Gilbertson v. Albright*, 381 F.3d 965, 969 n.4 (9th Cir. 2004) (en banc)] (noting that for *Younger* abstention purposes, proceedings are deemed on-going until state appellate review is completed).

> FN18.  *See, e.g.*, *Hill v. Colorado*, 530 U.S. 703, 715, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000) ("It is a traditional exercise of the States' 'police power to protect the health and safety of their citizens.'" (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996))); *see also Dept. of Revenue of Ky. v. Davis*, 553 U.S. 328, 340, 128 S. Ct. 1801, 170 L. Ed. 2d 685 (2008) (noting that state and local governments are "vested with the responsibility of protecting the health, safety, and welfare of their citizens" (quoting *United Haulers Ass'n v. Oneida–Herkimer Solid Waste Mgmnt Auth.*, 550 U.S. 330, 342, 127 S. Ct. 1786, 167 L. Ed. 2d 655 (2007))).

If this Court were to grant Leonard the relief requested, it would effectively render any further action by the California state courts a nullity.  The effect would be the same as if this Court entered an order enjoining the Placer County Court from proceeding to adjudicate Leonard's continued commitment as a SVP as instructed by the California

Court of Appeal.  This Court may not, under the *Younger* doctrine, enter such a judgment. Indeed, it lacks jurisdiction to do so.  Accordingly, this Court must abstain and dismiss this action.[FN19]

> FN19.  *American Consumer Pub. Ass'n, Inc. v. Margosdian*, 349 F.3d 1122, 1126 (9th Cir. 2003) (noting that when *Younger* applies, ordinarily the district court must dismiss).

*Leonard v. Ahlin*, No. 2:10-cv-01701, 2012 WL 868806, at *2 (E.D. Cal. Mar. 13, 2012).

Nothing has changed in Leonard's case that would compel the conclusion that the requirements enumerated above are no longer met.  Nor does it appear that there are any special circumstances that may warrant an exception to abstention in this case.  While there is no comprehensive definition of situations that would warrant an exception to the *Younger* abstention doctrine, interference in ongoing state proceedings has been found to be appropriate upon a showing that the state has engaged in bad faith or harassment or other unusual or special circumstances warranting equitable relief, such as flagrant and patent violations of express constitutional provisions or a demonstration of irreparable injury.  *Perez v. Ledesma*, 401 U.S. 82, 85 (1971); *Carden v. Montana*, 626 F.2d 82, 83-84 (9th Cir. 1980).

Leonard contends that this Court may consider his claims because the California Court of Appeal has since decided *People v. McKee*, 144 Cal. Rptr. 3d 308 (Cal. Ct. App. 2012), in which it rejected an identical challenge to the SVPA on equal protection grounds.  Leonard asserts that, "[a]s this issue has now been determined, no further action need be taken in this matter, which otherwise has become final."  However, while the California Court of Appeal in the district in which Leonard's case was brought has issued an opinion rejecting an identical challenge to the SVPA on equal protection grounds which is thus binding on the court to which his claim was remanded, *People v. Kisling*, 167 Cal. Rptr. 3d 339, 342 (Cal. Ct. App. 2014), Leonard's case

has still not been fully adjudicated and thus remains open.  As another federal circuit court has stated, "The fact that state or Commonwealth courts may reject (or have rejected) arguments on the merits, however, does not mean those courts have deprived a plaintiff of the *opportunity* to make the argument.  And, it is only where, for procedural or other reasons, the state courts deprive the plaintiff of such an *opportunity* that *Younger* does not apply." *Duty Free Shop, Inc.*, *v. Administracion De Terrenos*, 889 F.2d 1181, 1183 (1st Cir. 1989).  Nor does the trial court's delay in issuing an opinion in Leonard's case constitute an extraordinary circumstance.  *See Brown v. Ahern*, 676 F.3d 899, 903 (9th Cir. 2012) (holding that 5-year delay in prosecution on robbery charge was not an "extraordinary circumstance" for purposes of the abstention doctrine, and arrestee had to delay bringing his speedy trial claim in federal court until after he had been convicted at trial and first presented that claim to state appellate courts).

However, the *Younger* abstention doctrine rests on notions of comity, federalism, and respect for pending state proceedings.  *Fresh Int'l Corp. v. Agric. Labor Relations Bd.*, 805 F.2d 1353, 1356 (9th Cir. 1986) (quoting *Middlesex*, 457 U.S. at 431).  The doctrine is jurisprudential rather than jurisdictional, arising from "strong policies counseling against the exercise" of federal jurisdiction rather than a "lack of jurisdiction in the District Court."  *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986).  Consequently, a State may forego a tenable abstention claim and submit to adjudication in a federal forum.  *See Ohio Bureau of Emp't Servs. v. Hodory*, 431 U.S. 471, 480 (1977) ("It may not be argued, however, that a federal court is compelled to abstain in every such situation.  If the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system.").

10

A State waives its *Younger* challenge and consents to a federal forum when it "expressly urge[s]" the federal court to proceed. *Dayton*, 477 U.S. at 626. The Ninth Circuit has stated in dicta, however, that a State does not waive *Younger* by merely failing to raise the issue. *Boardman v. Estelle*, 957 F.2d 1523, 1535 (9th Cir. 1992) (per curiam). In this case, it appears that Respondent, who is represented by the California Attorney General, has waived any *Younger* argument. In her Opposition to Leonard's Petition, Respondent notes that Leonard has failed to provide any evidence or documentation showing the disposition of his case upon remand. Respondent does not, however, argue that this omission renders Leonard's Petition subject to dismissal under *Younger.* Rather, she contends that it shows that "the equal protection claim is unsupported and premature at best and not cognizable on federal habeas corpus."

Similarly, the record clearly indicates that Respondent is aware of this Court's dismissal of Leonard's prior petition on *Younger* grounds as an earlier Findings and Recommendations issued by the magistrate judge in this proceeding addressed the dismissal at length. Docket No. 18. However, Respondent does not address abstention or exhaustion grounds in her Opposition. It therefore appears that Respondent goes beyond failing to argue *Younger* and instead urges the Court to decide this case on the merits. Recognizing that Respondent seems content to have this matter resolved, this Court declines to abstain under the *Younger* doctrine and will address the merits of Leonard's claims as discussed below.

B.      Exhaustion

This Court may not consider claims that have not been fairly presented to the state courts.
28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).  To be
deemed exhausted, a claim must have been presented to the highest state court that may consider
the issue presented.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To have properly
exhausted his state court remedies, Leonard must have presented both the legal arguments and
the factual basis to the highest state court.  *See Peterson v. Lampert*, 319 F.3d 1153, 1155-56
(9th Cir. 2003).  Although Leonard raised his constitutional claims on direct appeal to the
California Court of Appeal, he did not present them to the California Supreme Court in his
petition for review.  Accordingly, Leonard's constitutional claims are unexhausted, and
unexhausted claims must be dismissed.  *See Rhines v. Weber*, 544 U.S. 269, 275-78 (2005).

However, this Court need not rely on this basis as it may deny the petition on the merits
notwithstanding the lack of exhaustion of state court remedies.  28 U.S.C. § 2254(b)(2) ("An
application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure
of the applicant to exhaust the remedies available in the courts of the State.").  Given that the
Court of Appeal remanded to the trial court Leonard's equal protection claim, which Leonard
had raised in his appellate brief as a single constitutional claim with his due process and ex post
facto challenges, it does not appear that Leonard could have fully exhausted his claims at this
time under the unusual procedural posture of this case.  Accordingly, this Court also declines to
dismiss the unexhausted constitutional claims solely on exhaustion grounds and will instead
reach the merits of the claims as discussed below.

C.      Merits

Insufficient Evidence (Claim 1)

Leonard first argues that there was insufficient evidence to support the jury's finding that

he "remains or ever was" an SVP.  An SVP is defined as "a person who has been convicted of a

sexually violent offense against one or more victims and who has a diagnosed mental disorder

that makes the person a danger to the health and safety of others in that it is likely that he or she

will engage in sexually violent criminal behavior."  CAL. WELF. & INST. CODE § 6600(a)(1).

The Due Process Clause of the Fourteenth Amendment "protects the accused against

conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  In order to comply

with constitutional requirements with regards to the SVPA, the state must show that Leonard has

serious difficulty in refraining from criminal sexual violence.  *Kansas v. Crane*, 534 U.S. 407,

411-12 (2002).  This standard does not require "*total* or *complete* lack of control," but "there

must be proof of serious difficulty in controlling behavior . . . [in order] to distinguish the

dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to

civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal

case."  *Id.* at 411-13.

Such a finding is supported by sufficient evidence if, "after viewing the evidence in the

light most favorable to the prosecution, any rational trier of fact could have found the essential

elements . . . beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)

(emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming

this standard).  In making this determination, this Court may not usurp the role of the finder of

fact by considering how it would have resolved any conflicts in the evidence, made the

inferences, or considered the evidence at trial.  *Jackson*, 443 U.S. at 318-19.  Rather, when

"faced with a record of historical facts that supports conflicting inferences," this Court "must

presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any

such conflicts in favor of the prosecution, and defer to that resolution."  *Id.* at 326.

A review of the record reveals that the evidence introduced at Leonard's civil

commitment trial, as laid out in detail above, was sufficient to support the jury's verdict that

Leonard met the definition of an SVP.  Both Drs. North and Hupka are licensed doctors who met

personally with Leonard prior to diagnosing him with coercive paraphilia and antisocial

personality disorder.[5]  Although Dr. North updated his diagnosis and no longer believed that

Leonard suffered from coercive paraphilia, he opined that Leonard nonetheless met the SVP

criteria based on his antisocial personality disorder which predisposed him to commit sexually

violent offenses.[6]  Dr. Hupka also testified that, even without the paraphilia diagnosis, he would

---

[5]        In *Hubbart v. Superior Court*, the California Supreme Court rejected the
appellant's request to strike down the SVPA because it does not expressly exclude antisocial
personality disorders or other conditions characterized by an inability to control violent
antisocial behavior, such as paraphilia, from being categorized as a "diagnosable mental
disorder."  969 P.2d 584, 598-99 (Ca1. 1999).  In so ruling, the court necessarily found that these
conditions can be mental disorders under the SVPA.

[6]        In an unpublished opinion, the California Court of Appeals rejected the
contention that an antisocial personality disorder diagnosis cannot provide the basis of an SVPA
commitment.  *People v. Swain*, No. F056514, 2010 WL 717687, at *3 (Cal. Ct. App. Mar. 3,
2010) ("We have found no authority to support Swain's position that an antisocial personality
disorder alone cannot form the basis of an SVP commitment where, like here, the jury makes the
required finding that the disorder makes him a danger to the public because, as a result of the
disorder, it is likely that he will engage in sexually violent predatory conduct.").

still find Leonard likely to engage in sexually violent criminal behavior given his severe antisocial personality disorder.

The jury was free to accept the conclusions of the prosecution experts over the defense experts, or to find North's first assessment that Johnson suffered from paraphilia to be more persuasive than his testimony at trial that Johnson did not. Thus, the evidence was sufficient to support the jury's finding that Johnson had a "mental disorder that ma[de] [him] a danger to the health and safety of others in that it is likely that he . . . will engage in sexually violent criminal behavior." CAL. WELF. & INST. CODE § 6600(a)(1); *see Rose v. Mayberg*, 454 F.3d 958, 962-65 (9th Cir. 2006) (finding of "mental disorder" that affected offender's emotional or volitional capacity and predisposed him to commit further sexual crimes constitutionally supported SVPA commitment). The jury's finding based on such evidence does not fall below the threshold of bare rationality, and the doctors' testimony at Leonard's trial satisfied *Jackson*.

In arguing to the contrary, Leonard relies in large part on the fact that he has not committed any sexually inappropriate behavior in over two decades. But as the Court of Appeal noted in rejecting this argument:

> [Leonard] neglects to mention that he has been confined in prison custody or in civil commitment for nearly all the time—the 23 years—he claims he has been towing the line with respect to his sexual behavior. The 23-year period began after he was convicted again of a forcible sex crime and sentenced to a significant term. While sexually inappropriate behavior certainly can take place behind custodial walls, the critical consideration is whether [Leonard] is likely to engage in sexually violent criminal behavior outside those walls, an environment much more conducive to such behavior. Drs. North and Hupka answered "yes" to this critical question.

*Leonard*, 2010 WL 1217971, at *3 (footnote omitted).

15

Leonard also argues that the likelihood of recidivism is very low given his advanced age, which, at the time of the Court of Appeal's decision, was nearly 60 years.  The Court of Appeals also reasonably rejected that argument, reasoning:

> [O]ne can say that, for [Leonard], it's not so much the age as the mileage.  Even though the advance to age 60 is typically a protective factor, Dr. Hupka concluded (and Dr. North concurred), "I don't see it with [Leonard]."  Both doctors noted [Leonard's] vigor and noted that he had physically assaulted another person in 2007 (an elderly patient).  Again, in Dr. Hupka's words: There was no evidence [Leonard] was "slowing down."  [He] had been "very hostile" and "potentially threatening" even during Dr. Hupka's recent interview.  This atypicality was what made Drs. North and Hupka opine that [Leonard] met the SVP criteria based on his severe antisocial personality disorder alone.
> Furthermore, [Leonard] points to studies showing the rate of re-offense for sex offenders age 60 and over is very low or zero.  Again, that is the typical case.  This is not. A study based on a Static-99-like test showed that offenders, aged 40 to 59 with two prior sexual sentencings, like [Leonard], had a 49 percent recidivism rate.  Also, [Leonard] tallied his Static-99 "high risk" score in 2000, not when he was some kid, but 50 years old.  And Dr. Kellaher's defense-supportive testimony that antisocial personality disorder typically falls to zero around age 60 concerning the commission of all crimes, including assault, is undercut by [Leonard's] commission of assault in 2007.

*Id.*

In short, ample evidence presented at Leonard's trial demonstrates that the California Court of Appeal's rejection of Leonard's claim was reasonable, and Leonard is therefore not entitled to relief on this ground.

Constitutional Claims (Claims 2, 3)

Leonard additionally contends in claim 2 that "[t]he order of indefinite commitment violated [his] federal constitutional rights to due process of law, to be free of ex[]post facto laws, and to equal protection of the law."  He also asserts in claim 3 that the SVPA violates his double jeopardy rights.

1.      *Due Process*

Leonard first claims that "Proposition 83 modified the SVP Act by providing for an indeterminate commitment and shifting the burden of proof in commitment proceedings to the committed individual to prove by a preponderance of the evidence that he is not a SVP."  He claims that the SVPA additionally violates due process because, "[w]hile the new version of the SVP Act does provide mechanisms for judicial review of the indefinite commitment, these mechanisms are inadequate under the due process clause."

The SVPA provides for the civil commitment of a person found to be "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."  CAL. WELF. & INST. CODE § 6600(a)(1).  Persons who are in custody under the jurisdiction of the California Department of Corrections and Rehabilitation are screened prior to their scheduled release from prison and, for those who screen positive, full evaluations are performed by the DMH.  *Id.* § 6601.  If formal commitment proceedings are initiated, the person is entitled to a trial by jury, *id.* § 6603(a), at which the verdict must be unanimous, *id.* § 6603(f), and the burden of proof is beyond a reasonable doubt, *id.* § 6604.

The SVPA originally provided for a two-year term of commitment and two procedures by which an SVP could obtain release.  First, former § 6605 required the DMH to submit an annual report with the committing court, following an examination, considering whether the committed person currently met the definition of an SVP and whether unconditional release was appropriate.  *See* 1995 Cal. Legis. Serv. Ch. 763 (A.B. 888) (West).  Second, the DMH was

17

required to notify the SVP of his or her right to petition the committing court for conditional release under § 6608 and to forward the notification and a waiver of the SVP's right to petition as part of the annual report. *Id.* If the SVP did not waive his or her right to petition, the committing court was required to set a show cause hearing to determine whether the person still met the definition of an SVP. *Id.*

The SVPA, as amended by Proposition 83, now provides for an indeterminate term of commitment. CAL. WELF. & INST. CODE § 6604. The amended SVPA no longer requires the DMH to submit notification and waiver of the SVP's right to petition the committing court under § 6608 as part of their annual report, but the amended SVPA continues to provide two procedures by which an SVP can obtain release. Section 6605 requires the DMH, following an examination, to submit an annual report with the committing court considering "whether the committed person currently meets the definition of a sexually violent predator and whether conditional release to a less restrictive alternative . . . or an unconditional discharge is in the best interest of the person and conditions can be imposed that would adequately protect the community." *Id.* §§ 6604.9(a),(b), 6605. The DMH is required to authorize the person to file a petition for conditional release or unconditional discharge where the person's condition has so changed that he no longer meets the definition of an SVP or conditional release is appropriate. *Id.* §§ 6604.9(b), 6605. Second, under § 6608, a person under commitment as an SVP may unilaterally petition for release, conditional or unconditional, without DMH concurrence. *Id.* § 6608(a). The committed person has the burden of proof by a preponderance of the evidence. *Id.* § 6608(i).

18

The California Court of Appeals rejected Leonard's due process claims, finding no basis for speculating that the DMS will not fairly assess the mental condition of a committed person and that the remainder of Leonard's due process claims were foreclosed by the California Supreme Court's decision in *People v. McKee*, 223 P.3d 566 (Cal. 2010). *Leonard*, 2010 WL 1217971, at *4.

Leonard is not entitled to federal habeas relief on these claims either because it cannot be said that the California Court of Appeal's rejection of his due process claims was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d). The United States Supreme Court has never held that the prosecution must bear the burden of proof at a release hearing initiated by a person who was civilly committed under state law upon a finding beyond a reasonable doubt that the person met the criteria for commitment. Nor is there any Supreme Court authority that requires periodic judicial hearings with regard to continued civil commitment or mandates more mechanisms for judicial review than the SVPA provides. In sum, because there is no Supreme Court precedent that controls on the due process claims raised by Leonard in state court, the California Court of Appeal's decision cannot be contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *See Carey*, 549 U.S. at 77.

2.      *Ex Post Facto*

Leonard additionally argues that the SVPA violates the constitutional prohibition against ex post laws.

The Ex Post Facto Clause applies only to punishment for criminal acts, whether punishment for an act not punishable at the time it was committed, or additional punishment to

19

that then prescribed.  *Collins v. Youngblood*, 497 U.S. 37, 42 (1990).  To determine what constitutes punishment in an ex post facto claim analysis, the Supreme Court has applied the double jeopardy "intent-effects" test set out in *United States v. Ward*, 448 U.S. 242, 248-249 (1980).  *See Smith v. Doe*, 538 U.S. 84, 92 (2003).  The two-pronged *Ward* test requires that the court inquire: (1) whether the legislature intended to impose punishment and, if not, (2) whether the sanction is so punitive in purpose or effect as to negate the state's intent to deem it civil.  *Smith*, 538 U.S. at 92.  The Court shall reject the legislature's intent under the second "effects" prong only where there is "the clearest proof" to support such a finding. *Id*.

The SVPA is a non-punitive statute under the initial intent prong of the *Ward* test.  First, the SVPA is placed within Welfare & Institutions Code, rather than California's criminal code, differentiating it from the state's laws intended to punish criminal acts.  Second, language in Proposition 83 states that "[i]t is the intent of the People in enacting this measure to help Californians better protect themselves, their children, and their communities; it is not the intent of the People to embarrass or harass persons convicted of sex offenses."  2006 Cal. Legis. Serv. Prop. 83 §1(f) (Proposition 83) (WEST).  The people of California approved Proposition 83 in 2006, amending the SVPA and thus expressing their intent that it serve as a civil commitment statute rather than a mechanism to punish criminal conduct.

Moving to the second prong of the *Ward* test, the SVPA's effects are not so punitive as to overcome the act's civil intent.  In assessing a law's effects, the Court shall consider the following seven-factor test:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is

20

> already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . .

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963) (footnotes omitted); *see, e.g., Smith v. Doe*, 538 U.S. 84, 95-105 (2003).

The seven-factor test set out in *Mendoza-Martinez* indicates that the SVPA's effect is non-punitive.  Under factors one and two, while the SVPA involves an affirmative disability or restraint, civil commitment of sexually violent predators has been historically regarded as a legitimate non-punitive governmental objective.  *Kansas v. Hendricks*, 521 U.S. 346, 363 (1997). Under factor three, SVPA commitment is based upon a currently "diagnosed mental disorder" rather than on a finding of scienter.  CAL. WELF & INST. CODE § 6600(a)(1),(c).  Factor four is not supportive of Leonard's position because the SVPA cannot be said to serve the penological purpose of deterrence or retribution because commitment is contingent on the inability to control sexually violent urges which, by definition, cannot be controlled or deterred, and the lack of a scienter requirement in the SVPA suggests that the statute is not intended to promote the penological purpose of retribution.  Under factor five, the behavior to which the SVPA applies is not a crime because being diagnosed with a mental disorder is not a crime.  Finally, under factors six and seven, the duration of an SVPA commitment is both related to the act's rehabilitative purpose and not excessive because commitment is conditional upon a current mental disorder. *Id.* §§ 6605, 6608.  In sum, consideration of all seven *Mendoza-Martinez* factors strongly suggests that the SVPA's effects are civil.

It is important to note that the Supreme Court denied a habeas challenge in circumstances similar to those presented by Leonard's ex post facto claim.  In *Hendricks*, the Supreme Court

21

upheld a Kansas civil commitment statute under the *Ward* "intent-effects" test, reasoning that the potential for indefinite confinement showed the rehabilitative, rather than punitive, purpose of the statute. *Hendricks*, 521 U.S. at 361-362. Additionally, the statute did not have a retroactive effect because confinement was conditioned upon a determination that the person was currently suffering from a mental disorder. *Id.* The SVPA mirrors the Kansas statute in that there is a potential for indefinite confinement and that commitment lasts only so long as the detainee suffers from an ongoing, diagnosed mental disorder. Accordingly, the California Court of Appeal's decision rejecting Leonard's ex post facto challenge is neither unreasonable nor contrary to federal law, and Leonard is therefore not entitled to relief on this ground.

### 3. *Equal Protection*

Leonard next argues that SVPs committed under the SVPA are denied equal treatment in comparison to those determinately committed as mentally disordered offenders ("MDO's") and as not guilty by reason of insanity ("NGI's"), with whom he claims share two "common criteria—a finding of mental disorder, and a showing of dangerousness."

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). The Supreme Court has articulated three distinct standards applicable to equal protection analysis: strict scrutiny, heightened scrutiny and rational basis review. *Id.* at 440-41. The standard to be invoked depends on the nature of the class involved or the interest affected.

In *People v. McKee*, the California Supreme Court "some merit" in this contention and remanded the case "to the trial court to determine whether the People . . . can demonstrate the constitutional justification for imposing on SVPs a greater burden than is imposed on MDO's and NGI's in order to obtain release from commitment." *McKee*, 223 P.3d at 587.  The Court of Appeal, after independently reviewing the additional evidence presented on remand in the superior court, subsequently concluded:

> [T]he People on remand met their burden to present substantial evidence, including medical and scientific evidence, justifying the amended Act's disparate treatment of SVP's (e.g., by imposing indeterminate terms of civil commitment and placing on them the burden to prove they should be released).  The People have shown that, "notwithstanding the similarities between SVP's and MDO's [and NGI's], the former as a class bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society."  The People have shown "that the inherent nature of the SVP's mental disorder makes recidivism as a class significantly more likely[;] . . . that SVP's pose a greater risk [and unique dangers] to a particularly vulnerable class of victims, such as children [;]" and that SVP's have diagnostic and treatment differences from MDO's and NGI's, thereby supporting a reasonable perception by the electorate that passed Proposition 83 that the disparate treatment of SVP's under the amended Act is necessary to further the state's compelling interests in public safety and humanely treating the mentally disordered.

*McKee*, 144 Cal. Rptr. 3d at 324 (internal citations omitted).

The California Court of Appeal's decision in *McKee*, which rejects Leonard's equal protection claim, does not contravene or unreasonably apply federal law.  It simply cannot be said that the appellate court's determination that the disparate treatment between SVPs and MDO's and NGI's is necessary to further a compelling state interest is objectively unreasonable. *Williams*, 529 U.S. at 409.  Accordingly, Leonard is not entitled to relief on his equal protection claim.

4.     *Double Jeopardy*

Leonard additionally argues that the SVPA violates his double jeopardy rights.  In

rejecting that claim on direct appeal, the California Court of Appeal held:

> [Leonard] also claims the amended SVP Act violated his double jeopardy
> rights.  However, [Leonard] has forfeited this claim by failing to separately head
> it and to provide authority for it.  (Cal. Rules of Court, rule 8.204(a)(1)(B);
> *Troensegaard v. Silvercrest Industries, Inc.* (1985) 175 Cal. App. 3d 218, 228,
> 220 Cal. Rptr. 712.)

*Leonard*, 2010 WL 1217971, at *5 n.3.

Respondent contends that, because the California Court of Appeal decided the issue on

state procedural grounds, Leonard is procedurally barred from raising the double jeopardy issue

in this Court.  Federal courts "will not review a question of federal law decided by a state court if

the decision of that court rests on a state law ground that is independent of the federal question

and adequate to support the judgment."  *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).  This

Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the

petitioner failed to follow applicable state procedural rules in raising the claims . . . ."  *Sawyer v.*

*Whitley,* 505 U.S. 333, 338 (1992).  The appellate court's denial is therefore an independent and

adequate state ground that precludes federal habeas review.  *Cone v. Bell,* 556 U.S. 449, 465

(2009) ("[C]onsistent with the longstanding requirement that habeas petitioners must exhaust

available state remedies before seeking relief in federal court, we have held that when a

petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the

state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate

state ground for denying federal review.").

Moreover, even if this Court were to reach the merits of Leonard's claim, it would be denied.  As previously discussed, California's SVPA is civil and not criminal in nature, thus foreclosing any attack on double jeopardy grounds.  *See Seling v. Young*, 531 U.S. 250, 260-65 (2001) (the civil nature of a statute forecloses double jeopardy claims, even if the individual argues that the statute is punitive as applied to him or her, because it does not establish criminal proceedings or constitute a punishment); *Hendricks*, 521 U.S. at 359-69.  Leonard's third ground is thus both procedurally barred and meritless.

Ineffective Assistance of Counsel (Claim 4)

Finally, Leonard argues that he was denied the effective assistance of trial and appellate counsel.

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*  The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Thus, Leonard must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.  *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

It is through this highly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d) standard. *See Knowles*, 556 U.S. at 123 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

Leonard first argues that his trial counsel rendered ineffective assistance because he failed to preserve the issue of whether the trial court erroneously denied his request to exclude expert witness testimony from the probable cause hearing on the basis that the interview on which the testimony was based was unrecorded. Leonard raised this claim in his state habeas petition, which was summarily denied.

In support of his claim, Leonard attaches to his Petition the transcript of a hearing held on August 10, 2005, in which he objected to the introduction of the evaluators' testimony regarding their evaluations because he did not have an audiotaped copy of the evaluations. Leonard stated

that he had requested that the evaluations be audiotaped, but his requests were refused and his

trial counsel "didn't listen" to his complaint.  Trial counsel then stated:

> Now, I haven't been able to make the issue previously because I couldn't get any information from Mr. Leonard if he would be interviewed, and since it's been the longest time since he's considered to [sic] an interview, one time when I went to Atascadero, he wouldn't even be interviewed by me so I didn't know he wanted to talk to the doctors.  If that's so, I think it is something that we need to take up."

The trial court indicated that Leonard could undergo an authorized audiotaped evaluation

between the probable cause hearing and trial, but it would not grant a continuance of the

probable cause hearing as any request would be untimely.  Trial counsel responded:

> The reason that I would disagree with the Court on that is that [Leonard] has never been provided an opportunity to make a request for taping prior to this.  Part of that has been his inclination to not discuss his case with my office, but the first available opportunity for that would be sometime between the 19th and 25th of July.  He was absent on the court appearance on the 29th, and this is the next available opportunity to have contact with me.  I have attempted to mail to him, and he indicates that was unsuccessful so he hasn't had an opportunity to get this issue before the Court and make the request.
> If the Court is directing that ruling in instances where probable cause hearings are promptly set, [Leonard] would be effectively denied a right to get that request in.  They haven't had an opportunity to speak to counsel.  And so under the timing of this particular case, he's done it about as fast as he could.

The record therefore indicates that, contrary to Leonard's assertion, his trial counsel

objected to the court's ruling.  The record also shows that trial counsel could have raised the

issue earlier had Leonard provided him with the necessary information.  *See Alcala v. Woodford*,

334 F.3d 862 (9th Cir. 2003) (finding that trial counsel's performance was not deficient where

defendant did not inform him of facts within defendant's knowledge).  Moreover, Leonard

cannot demonstrate prejudice as the trial court specifically authorized an audiotaped interview,

and the record indicates that Leonard submitted to an interview with Dr. Hupka in June 2007,

prior to trial.  Consequently, Leonard's corresponding ineffective assistance of appellate counsel

claim, which alleges that counsel should have raised on appeal the ineffective assistance of trial counsel, also must fail.  *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002) ("A failure to raise untenable issues on appeal does not fall below the *Strickland* standard.").

Leonard also faults appellate counsel for failing to properly raise his double jeopardy claim.  However, as discussed above, that claim is without merit and would have been without merit before the state appellate courts in light of the California Supreme Court's decision in *McKee*, 223 at 576-78 (rejecting defendant's contention that SVPA is punitive).  Accordingly, Leonard cannot prevail on any of his ineffective assistance claims.

## V. CONCLUSION AND ORDER

Leonard is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the

Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: December 16, 2014.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
